Hon. John H. Chun

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA BRANSON and CHERIE BURKE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>WASHINGTON FINE WINE & SPIRITS, LLC, a Washington limited liability company doing business as TOTAL WINE & MORE; and DOES 1–20,<br><br>        Defendants. | No. 2:24-cv-00589-JHC<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>**Noted on Motion Calendar: June 18, 2026** |

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page i

McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   MATERIAL FACTS ........................................................................................... 2

    A.   WFW&S structure and hiring practices .................................................. 2

    B.   Plaintiffs' claims against WFW&S ......................................................... 5

III.  ARGUMENT....................................................................................................... 8

    A.   Standard of Review ................................................................................. 8

    B.   Plaintiffs have not identified an ascertainable class. .............................. 9

        1.   Plaintiffs improperly seek a fail-safe class that renders class members unascertainable. ....................................................... 9

        2.   Plaintiffs' definition ignores whether class members have standing. ........ 12

        3.   Plaintiffs have not established that it is administratively feasible to determine class membership. ....................................... 13

    C.   Amendments to the EPOA in 2025 are retroactive and create manifold individualized determinations. ............................................... 13

        1.   The amendments are retroactive. .............................................. 13

        2.   The variability in statutory damages will require individualized determinations unsuitable for class treatment. ........................... 16

    D.   The proposed class is too broad to warrant certification and, at minimum, should be limited to individuals who applied for the same open positions as Plaintiffs. ....................................................... 17

    E.   Plaintiffs have not satisfied the requirements of Rule 23(a). .............. 19

        1.   Plaintiffs cannot establish numerosity under Rule 23(a)(1) for each open position. ......................................................... 19

        2.   The questions raised are not common to the class as defined (Rule 23(a)(2)). ...................................................... 19

        3.   The claims of the representative parties are not typical (Rule 23(a)(3)). ......................................................... 20

        4.   The representative parties will not fairly and adequately protect the interests of the class (Rule 23(a)(4)). ............................... 21

    F.   Plaintiffs have not satisfied the requirements of Rule 23(b)(3). ......... 23

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page ii

McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1.  Common questions of law or fact do not predominate. ..............................23

2.  A class action is not superior to other available methods. ..........................24

IV.  CONCLUSION.................................................................................................26

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page iii

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*1000 Virginia Ltd. P'ship* v. *Vertecs Corp.*, 146 P.3d 423 (Wash. 2006) (en banc) ..................................................................................................................15

*Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591 (1997)..........................................25

*Angulo* v. *Providence Health & Servs.*, No. C22-0915JLR, 2024 WL 3744258 (W.D. Wash. Aug. 9, 2024) ...................................................................................9

*Barnes* v. *Coca-Cola Co.*, No. 1:22-cv-0-1511-KJM-EPG, 2025 WL 1027431 (E.D. Cal. Apr. 7, 2025)......................................................................................12

*Bateman* v. *Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ....................25

*Bayless* v. *Community Coll. Dist. No. XIX,* 927 P.2d 254 (Wash. App. 1996).............15, 16

*Berry* v. *Transdev Servs. Inc.*, No. C15-01299-RAJ, 2019 WL 117997 (W.D. Wash. Jan. 7, 2019)..........................................................................................24

*Bodner* v. *Oreck Direct, LLC*, No C06-4756-MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ...........................................................................................22

*Branson* v. *Washington Fine Wine & Spirits, LLC*, 574 P.3d 1031 (Wash. 2025)...2, 12, 20

*Clay v. Union Pacific RR Co.*, 171 F.4th 975 (7th Cir. 2026) ...............................16

*Comcast Corp.* v. *Behrend*, 569 U.S. 27 (2013) ...................................................24

*De Coster* v. *Amazon.com, Inc.*, 350 F.R.D. 293 (W.D. Wash. 2025) ...............19

*Ellis* v. *Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ..........................21

*Gessele* v. *Jack in the Box Inc.*, 174 F.4th 1108 (9th Cir. 2026) .........................25

*Hale* v. *Wellpinit Sch. Dist. No. 49*, 198 P.3d 1021 (Wash. 2009) (en banc) .....................15

*Hanon* v. *Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .............................21

*Hansen* v. *W. Coast Wholesale Drug Co.,* 289 P.2d 718 (Wash. 1955) (en banc).............16

*In re F.D. Processing, Inc.*, 832 P.2d 1303 (Wash. 1992).....................................15

*In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012), *aff'd*, 588 Fed. Appx. 733 (9th Cir. 2014)..............................................................22

*In re Google Generative AI Copyright Litig.*, No. 23-cv-03440-EKL, 2025 WL 1159998 (N.D. Cal. Apr. 21, 2025) ...................................................................9

*In re Toys "R" Us*, 300 F.R.D. 347 (C.D. Cal. 2013) ...........................................25

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page iv

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Johnson* v. *Continental West, Inc.,* 663 P.2d 482 (Wash. 1983) ........................................16

*Kellogg* v. *National Railroad Passenger Corp.*, 504 P.3d 796 (Wash. 2022) (en banc) .....................................................................................................................14

*Krueger* v. *Wyeth, Inc.*, No. 03CV2496, 2008 WL 481956 (S.D. Cal. Feb. 19, 2008) ......................................................................................................................22

*Local Joint Exec. Bd.* v. *Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ...............22

*Lundquist* v. *First Nat'l Ins. Co.*, No. C18-5301RJB, 2020 WL 6158984 (W.D. Wash. Oct. 21, 2020) ....................................................................................................24

*Macumber* v. *Shafer,* 637 P.2d 645 (Wash. 1981)..........................................................15, 16

*Marine Power & Equip. Co.* v. *Human Rights Comm'n Hearing Tribunal,* 694 P.2d 697 (Wash. App. 1985) .................................................................................15, 16

*Milito* v. *Electronic Arts, Inc.*, No. 25-2-35947-6 (Wash. Super. Ct. King Cnty. May 15, 2026)........................................................................................................17

*Milito* v. *Snap Inc.*, Case No. 25-2-03854-8 (Wash. Super. Ct. King Cty. Dec. 17, 2025) ...................................................................................................................18

*Moquete* v. *GNC Holdings, LLC*, No. CV24-05393 BHS, 2026 WL 622112 (W.D. Wash. Mar. 5, 2026) ............................................................................11, 19

*Morrison* v. *Esurance Ins. Co.*, No. C18-1316TSZ, 2020 WL 583824 (W.D. Wash. Feb. 6, 2020)......................................................................................................25

*Nichols* v. *eHealthInsurance Servs. Inc.*, No. 23-cf-06720-EKL, 2025 WL 689721 (N.D. Cal. Mar. 3, 2025)...............................................................................10

*Olean Wholesale Groc. Coop., Inc.* v. *Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) ...........................................................................................8, 9

*Petzing* v. *Discount Tire Co.*, No. 24-2-25791-8 SEA (Wash. Super. Ct. King Cty. May 1, 2026)........................................................................................................18

*Randleman* v. *Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011)........................11

*Robinson* v. *McHugh,* 291 P. 330 (Wash. 1930) ...............................................................16

*Rowden* v. *Pacific Parking Sys.*, 282 F.R.D. 581 (C.D. Cal. 2012, *aff'd*, 583 Fed. Appx. 803 (9th Cir. 2014).........................................................................24, 25

*Sanchez* v. *Wal Mart Stores, Inc.*, No. 2:06-CV-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009) ...........................................................................................22

*Small* v. *Allianz Life Ins. Co.*, 122 F.4th 1182, 1203 (9th Cir. 2024) ................................21

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page v

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Tacoma Auto Mall, Inc.* v. *Nissan N. Am., Inc.*, 279 P.3d 487 (Wash. App. 2012) ..................................................................................................................12

*Tomaszewski* v. *Circle K Stores Inc.*, No. 20-01569-PHX-SMB, 2021 WL 2661190 (D. Ariz. Jan. 12, 2021) ...................................................................9

*Voivod* v. *RCSH Ops., Inc.*, No. 25-2-21300-5 SEA, 2026 Wash. Super. Lexis 2 (Wash. Super. Ct. King Cty. Jan. 15, 2026) ..............................................10

*Wakefield* v. *ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) ...................................25

*Weidenhamer* v. *Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) ...............................................................................13

**Statutes**

RCW 49.58.070 ......................................................................................................16

RCW 49.58.110(1) .............................................................................................11, 14

RCW 49.58.110(4) .................................................................................................20

RCW 49.58.110(5) ...............................................................................13, 14, 20, 21

RCW 49.58.110(6) .................................................................................................14

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................8, 19, 20, 21

Fed. R. Civ. P. 23(b) ....................................................................................8, 9, 23

Fed. R. Civ. P. 23(c) ...............................................................................................13

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendant Washington Fine Wine & Spirits, LLC ("WFW&S") respectfully submits this opposition to Plaintiffs' motion for class certification (Dkt. 65).

## I.    INTRODUCTION

Plaintiffs Lisa Branson and Cherie Burke, represented by lawyers who have filed hundreds of class-action complaints under Washington's Equal Pay and Opportunities Act (EPOA), claim that they applied for certain WFW&S jobs through two separate job platforms: (i) the official job application site used by WFW&S (Jobvite), and (ii) a third-party listing service (Indeed) that was intended to direct Indeed users to apply on Jobvite. Ms. Branson applied to two of four jobs posted on Jobvite on March 22, 2024; both contained a pay band and description of benefits as required by the EPOA. Yet three days later, instead of continuing to use Jobvite, Ms. Branson searched Indeed where she found a "Sales Associate" position that did not contain a pay range. She purportedly "applied" for the Sales Associate position on Indeed on March 25, even though the same position was posted on Jobvite with a pay band when Branson visited three days earlier. The next day she filed the pending action, relying solely on the Indeed "application."

Ms. Burke's experience was different. She initially used Indeed to "apply" for a temporary (or seasonal) "Cashier" position without knowing that position had been filled (and not removed from the Indeed website). After the holidays, the store manager noticed this error and emailed Ms. Burke to invite her to apply through Jobvite for a permanent cashier position that had opened after the holiday season ended. Ms. Burke applied for that position on Jobvite, which included the required pay band. She also interviewed for the position and received an offer that was within the disclosed pay band. Instead of accepting the offer, she filed a lawsuit through different counsel, which was later consolidated with Ms. Branson's case. Thus, neither plaintiff has a valid individual claim under the EPOA, let alone one that is suitable for class treatment.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 1

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

The EPOA was intended to prevent harm to job applicants who "spend hours going through rounds of interviews only to find out they can't live on the offered pay." Eaton Decl. Ex. 19, S.B. Rep. 5761 (Labor, Commerce & Tribal Affairs), at 3 (Jan. 7, 2022) (staff summary of public testimony). It was not intended to "give bounty seekers an incentive to trawl the Internet for noncompliant job postings to obtain a statutory damages award unrelated to any personal harm." *Branson* v. *Washington Fine Wine & Spirits*, *LLC*, 574 P.2d 1031, 1040 (Wash. 2025) (McCloud, J., dissenting). Despite evidence that a pay range *was* disclosed to these Plaintiffs, they nonetheless seek certification of a statewide class of individuals who applied for dozens of different jobs in all 14 of WFW&S's retail stores over a 31-month period. Plaintiffs' proposed class could include up to 20,000 individuals, seeking statutory damages of $5,000 per applicant, plus attorney's fees. Such an extraordinarily broad class is inappropriate under Rule 23 and would be ruinous for WFW&S, a responsible business that employs hundreds of employees in the state and has made substantial efforts to materially comply with Washington's pay transparency laws.

The motion to certify should be denied for at least four independent reasons. First, Plaintiffs have no viable claims since they both received pay transparency while using WFW&S's official job platform and by other means. Second, Plaintiffs' proposed class is not ascertainable within the meaning of Rule 23, in part because it is an improper fail-safe class. Third, Plaintiffs' claims are subject to numerous individualized issues that make them unsuitable for class treatment. Finally, class-based relief is not superior because the EPOA provides adequate remedies for Plaintiffs and other aggrieved applicants to file *individual* claims against employers.

## II.   MATERIAL FACTS

### A.   WFW&S structure and hiring practices

WFW&S owns and operates 14 wine and spirits retail stores in Washington and employs about 400 people in the state. Connolly Decl. Ex. 3 (Bradley Carman Tr.,

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 2

MᴄNᴀᴜʟ Eʙᴇʟ PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

hereafter, "Carman Tr.") at 31, 49.[1] WFW&S uses "Total Wine" as a trade name. Retail Services & Systems, Inc. (RSSI), a Maryland corporation, provides certain support services to WFW&S and separate but affiliated businesses in other states, including assistance with job recruitment. But WFW&S is responsible for hiring and managing its own workforce. *Id.* at 31-32. WFW&S hires cashiers, merchandisers, sales associates in various beverage departments, overnight workers to replenish inventory, storage/warehouse receivers, delivery drivers, and supervisors, among others. Solomon Decl. Ex. 3 (Dkt. 66-3), at 3. Frequent turnover for some positions warrants continual or "evergreen" advertisements for those jobs, meaning the posting remains in place whether a position is open or filled. Carman Tr. at 84-86 & Dkt. 66-3 at 3. The company publishes a robust set of employment policies and regularly trains its managers to comply with applicable employment laws. *See*, *e.g.*, Dkt. 66-3, 66-4, 66-5.

Soon after the EPOA pay-transparency amendments became effective on January 1, 2023, WFW&S experienced an unprecedented spike in applications. *See* Declaration of Brandon W. Wilkerson ("Wilkerson Decl.") ¶ 5. Although WFW&S does not have exact records, its district manager estimated that the company received between 7,500 and 10,000 job applications per year in 2023 and 2024, and a somewhat smaller number in 2025. Carman Tr. 210-211. The spike was even more significant in the two stores where Plaintiffs applied—Tukwila, where the year-over-year increase was approximately 67% in 2023 and 31% in 2024, and Lynnwood, where the increase was a staggering 605% in 2023 and 151% in 2024. Wilkerson Decl. ¶ 5.[2]

---

[1] Plaintiffs attached most but not all of Mr. Carman's transcript; for convenience, WFW&S attaches the full transcript rather than just the missing pages. WFW&S relies on deposition exhibits that Plaintiffs submitted, and includes others that Plaintiffs did not submit. WFW&S also attaches the Plaintiffs' full transcripts.

[2] Mr. Wilkerson describes in his Declaration the devastating effect that a judgment based on state-wide certification would have on WFW&S's business.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 3

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

During the period relevant to this matter, WFW&S used an online employment-recruitment platform called Jobvite. Carman Tr. at 37. Individuals could be hired at WFW&S only by applying through Jobvite. *Id.* at 132; Declaration of Amber Baker ("Baker Decl.") ¶ 3. For Washington-based positions, WFW&S personnel identified employment needs, and RSSI would create and post a unique "requisition" and post it to the Jobvite site. Carman Tr. at 63. Prior to May 2023, WFW&S set a pay range (or "band") for each requisition in advance of posting. *Id.* at 124-25; Dkt. 66-3 at 4. Pay was set in bands to give managers discretion in making offers based on an applicant's experience and other factors. *See* Dkt. 66-3 at 5. At the time Plaintiffs applied for jobs at WFW&S, all requisitions included "nationwide" pay bands for all Washington postings on Jobvite. Carman Tr. at 153-54 & Dkt. 66-4. WFW&S also had a policy to disclose pay band information to any applicants who asked. *E.g.*, Baker Decl. ¶¶ 13-14; Connolly Decl. Ex. 3-14.

On May 15, 2023, RSSI distributed a "Pay Transparency Discussion Guide" to management personnel at WFW&S and other Total Wine affiliates describing a voluntary rollout of pay transparency for all states modeled after the 2023 amendments to the EPOA in Washington (i.e., with pay bands in all postings). Carman Tr. at 153-54 & Dkt. 66-4. The entry-level pay for Washington positions all fell within the nationwide pay bands. In a few cases the low end of the range was below a Washington state or local municipality's minimum wage, but the company stated explicitly both in internal documents *and in the postings themselves* that the low end of the range would automatically be adjusted upward to account for a state or local minimum wage. Carman Tr. at 122, 169-174, 215 & Dkt. 66-5 at 5. (No evidence in this case suggests that WFW&S paid employees less than the applicable minimum wage.) And starting in April 2024, WFW&S explicitly incorporated the state and local minimum wages into the pay bands themselves. Carman Tr. at 173, 177-78.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 4

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

A few individual WFW&S store managers also used Indeed, a third-party recruitment website. Carman Tr. at 134-35. WFW&S's use of Indeed was limited to postings that referred individuals to official listings on Jobvite. *Id.* at 138, 205; Baker Decl. ¶¶ 3-4; Dkt. 21 ¶ 3. Prior to March 29, 2024, the Indeed postings did not include the applicable pay bands (although all Jobvite postings after May 12, 2023, included the bands). On or about March 29, 2024, WFW&S closed all individual Indeed accounts used by its Washington store managers. Baker Decl. ¶ 18.

Other than this lawsuit and the related *Atkinson* complaint described below, WFW&S has never received a complaint about its compliance with the EPOA, including internal or administrative complaints. Carman Tr. at 179-81.

**B. Plaintiffs' claims against WFW&S**

This litigation began when Plaintiffs' lead counsel filed an EPOA putative class action claim against WFW&S through a serial EPOA plaintiff named Jacob Atkinson. *Atkinson v. Washington Fine Wine & Spirits, LLC*, Case No. 2:23-cv-01737-BJR, Dkt. 1-1. WFW&S moved to dismiss the complaint and warned Plaintiffs' counsel that Mr. Atkinson had falsely asserted that he was a Washington resident when clear evidence showed he lived out of state. *See* Dkt. 20-2. Mr. Atkinson voluntarily dismissed his case on March 26, 2024, and on the *same day* Ms. Branson, using the same law firm, filed this action in state court. Dkt. 1-2, at 1.

Ms. Branson is a high school graduate with some college training who listed job experience as a travel consultant, office manager, medical support representative, and a few miscellaneous positions. *See* Dkt. 66-7. She claimed in her complaint that "[o]n or about March 25, 2024"—one day before she filed this complaint—she "applied" through Indeed for a position as a "Wine/Spirit Sales Associate" at WFW&S's Tukwila outlet. Dkt. 1-2, at 4. Ms. Branson (or her counsel) attached a partially obscured screenshot of the Indeed posting to her Complaint. She claimed at deposition that she took the screenshot

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 5

because "it didn't have a salary listed on it, and I wanted to check it out to see if they violated the law." Connolly Decl. Ex. 1 (Deposition of Lisa Branson, hereafter "Branson Dep.") at 125. As explained above, listings on Indeed are not considered applications for WFW&S positions, *see* Baker Decl. ¶¶ 3-4, so the Tukwila store manager customarily sent a standardized message through Indeed directing interested parties to apply through Jobvite. *Id.* ¶ 4. The manager in fact reached out to Ms. Branson on March 28 and provided a link to Jobvite. *Id.* ¶ 10 & Ex. D. Ms. Branson could not remember whether she reviewed Jobvite, but she responded that she was "interested depending on upon [sic] what the salary is for this position" (even though she had already filed a lawsuit). Baker Decl. ¶ 16 & Ex. D. The manager responded on April 1 that the "hourly wage range for this position is $12.50 - $26.00"; that compensation would be based on several factors; and that the starting hourly rate would equal or exceed the required minimum wage. *Id.* The manager again provided a link to Jobvite. *Id.*

There is no record that Ms. Branson applied for the Wine/Spirit Sales Associate position through Jobvite. There are records, however, indicating that four days earlier, on March 22, 2024, Ms. Branson applied for two *different* WFW&S positions through Jobvite: Delivery Driver / Merchandiser (at Lynnwood), and Retail Assistant Manager (at Tukwila). Dkt. 22, 22-1, 22-2. WFW&S produced those records in this litigation almost two years ago. *Id.* And those records show that the pay bands were disclosed on the Jobvite listing. Connolly Decl. Ex. 3-10, at WFW&S-01060; *id.* Ex. 3-11, at WFW&S-00034.

During her deposition, Ms. Branson testified that she applied for several positions at WFW&S, but she could not remember the details. Branson Dep. at 95-96. Ms. Branson also showed no meaningful interest in the class action she wants to lead. She claimed she read the complaint, but could not say how many complaints had been filed on her behalf. *Id.* at 19-20. And she had no explanation for why her complaint was based solely on a

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 6

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

screenshot of an Indeed posting for a job that she did not apply for through Jobvite, despite a request from Tukwila's store manager that she do so.

Ms. Branson could not describe anything about the issues this Court certified to the Washington Supreme Court. *Id.* at 20, 23. She had no role in selecting one of the two law firms representing her. *Id.* at 22-23. She could not identify the court in which the case is pending. *Id.* at 23. She did not know what damages she was seeking. *Id.* at 24. She couldn't describe the EPOA or her claim. *Id.* at 24-25. She had no idea how to describe the class she was seeking to certify. *Id.* at 26. And she had no understanding of her co-plaintiff's claim. *Id.* at 25.

The other named plaintiff, Ms. Burke, is also a high school graduate with some college background. Connolly Decl. Ex. 2 (Deposition of Cherie Burke, hereafter "Burke Dep.") at 16-17. Ms. Burke has worked mostly as a bartender and waitress. *See id.* at 42. According to her Complaint, in or around December 2023, Ms. Burke applied through Indeed for a "Cashier/Customer Service" position at WFW&S's Tukwila store. Dkt. 31 ¶ 27 & Ex. 2. Burke Dep. at 99, 109. She claimed she never applied for any other position with WFW&S. *Id.* at 104-05. But there was no open position for a "Cashier/Customer Service" worker in December 2023 because the position posted on Indeed had been filled before the 2023 Christmas holiday season. Baker Decl. ¶ 8. As the store manager explains, WFW&S sometimes left Indeed advertisements up after positions were filled, either due to oversight or because certain roles were treated as "evergreen." *Id.* ¶ 7.

A permanent cashier's position opened in January 2024, prompting the store manager to send a message via Indeed on January 21 asking Ms. Burke to "apply to our website from the link below," which pointed to Jobvite. *Id.* ¶ 10. Ms. Burke admitted that she reviewed the information on the WFW&S website. Burke Dep. at 118. The Cashier listing on Jobvite stated:

> The hourly rate for this position is $12.00 - $24.00. Compensation may vary
> based on a number of factors including, but not limited to, market location, job-

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 7

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

related knowledge, skills and/or experience. *The actual hourly rate will equal or exceed the required minimum wage applicable to the job location.

Connolly Decl. Ex. 3-17, at WFW&S-01079. That same day, Ms. Burke applied for the Cashier position on Jobvite. In fact, she later interviewed in person and was offered the position at $20.80/hour, but she did not accept. Baker Decl. ¶ 14.

During her deposition, Ms. Burke could not recall if she had read her complaint in this case. She did not decide to seek certification of a class, and she did not have any understanding as to whether class certification was a good idea. Burke Dep. at 24. She did not know anything meaningful about the issues certified to the Washington Supreme Court. *Id.* at 26-27. She did not know what damages she was seeking. *Id.* at 27. She did not know if her claim was different from those of the putative class members. *Id.* Other than her deposition preparation, she had never consulted with her lawyers. *Id.* at 28. She could not describe anything about the membership of the class she seeks to certify and lead. *Id.* Although she has been a plaintiff in at least five other pay-transparency cases, plus an age-discrimination case, *see id.* at 71-87, she has "no idea" what relief she is entitled to or how any class member has been harmed, *id.* at 123-24. She did not know if she was seeking attorney's fees in the case or how her lawyers were to be compensated. *Id.* at 127.

### III. ARGUMENT

### A. Standard of Review

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3)[3] have been satisfied." *Olean Wholesale Groc. Coop., Inc.* v. *Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (quotations omitted). Plaintiffs must "actually prove—not simply plead— that their proposed class satisfies each requirement of Rule 23." *Id.*; *see also* Dkt. 65 at

---

[3] This assumes the plaintiff is not seeking certification under Rule 23(b)(1) or (2), as is the case here.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 8

19-25. As set forth below, Plaintiffs (who have no valid individual claims) have failed to prove that their proposed class satisfies several elements of subsection (a), all of which Plaintiffs must prove. Nor have Plaintiffs proved the requirements of subsection (b)(3). Before reaching those provisions, however, the Court should deny the motion because Plaintiffs have not described a certifiable class.

## B. Plaintiffs have not identified an ascertainable class.

### 1. Plaintiffs improperly seek a fail-safe class that renders class members unascertainable.

Courts may not certify a "'fail-safe' class," meaning one "that is defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14; *Angulo* v. *Providence Health & Servs.*, No. C22-0915JLR, 2024 WL 3744258 at *8 (W.D. Wash. Aug. 9, 2024) ("*Olean* expressly admonishes courts that they must not create fail safe classes."). An improper fail-safe class is one "defined in a way that precludes membership unless the liability of the defendant is established." *In re Google Generative AI Copyright Litig.*, No. 23-cv-03440-EKL, 2025 WL 1159998 at *2 (N.D. Cal. Apr. 21, 2025) (quotations omitted). Fail-safe classes are sometimes treated as failing the ascertainability requirement implicit in Rule 23, but a growing body of post-*Olean* cases treat it as a standalone requirement that often impedes certification. *See Tomaszewski* v. *Circle K Stores Inc.*, No. 20-01569-PHX-SMB, 2021 WL 2661190 at *3 (D. Ariz. Jan. 12, 2021) (class definition that excluded spam call recipients who did not give consent was improper fail-safe class); *Ochoa* v. *City of Los Angeles*, No. 20-cv-06963-AB-AGR, 2025 WL 3248088 *16 (C.D. Cal. Aug. 11, 2025) (class definition of all persons police "wrongfully" identified as gang members was improperly fail-safe); *Angulo*, 2024 WL 3744258 at *7 (court could not certify class of persons who "suffered damages" from unnecessary medical procedures).

Plaintiffs define their class as:

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 9

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

> All individuals who, from January 1, 2023, through July 26, 2025, applied for a job opening in Washington State with [WFW&S], where the job posting did not disclose the wage scale or salary range for the position.

Dkt. 65 at 10. That definition would require resolution of core questions on the merits. Most significantly, RCW 49.58.110 provides that employers must disclose "in each posting for each job opening … [t]he wage scale or salary range." As Plaintiffs acknowledge throughout their motion, WFW&S *did* include pay ranges in postings on Jobvite during most of the proposed class period. *See* Dkt. 65 at 5-7. Plaintiffs contend that those ranges were inadequate for various reasons; either because the low end of a range fell below a state or local minimum wage (ignoring the posted language addressing this), or because a "national" range was too broad to qualify as an in-state "wage scale or salary range." WFW&S emphatically disagrees with Plaintiffs' countertextual interpretation of "wage scale or salary range."[4] For purposes of certification, however, the Court would have to first decide the contested question on the merits to define class membership.

In *Nichols* v. *eHealthInsurance Servs., Inc.*, No. 23-cv-06720-EKL, 2025 WL 689721 at *5 (N.D. Cal. Mar. 3, 2025), the court explained that when class membership in a Telephone Consumer Protection Act case turned on receipt of a "telephone solicitation" (rather than a telephone call), the definition was improperly fail-safe. A "telephone solicitation" was the defined statutory prohibition, and determining whether a solicitation occurred was a merits question. Plaintiffs' proposed class here suffers from the same flaw (although, unlike in *Nichols*, it is not correctable). Plaintiffs want a class defined by a core

---

[4] One state trial court held that a posted range of "$18.69 - $18.69 plus tips" was not consistent with the EPOA because the minimum hourly wage in Seattle at the time was $19.97. *Voivod* v. *RCSH Ops., Inc.*, No. 25-2-21300-5 SEA, 2026 Wash. Super. Lexis 2 at *7 (Wash. Super. Ct. King Cnty. Jan. 15, 2026). In this case, however, WFW&S's disclosed pay ranges were not entirely below the minimum wage. Moreover, unlike the employer in *Voivod*, WFW&S's Jobvite postings typically stated immediately below the pay range: "*The actual hourly rate will equal or exceed the required minimum wage applicable to the job location." *E.g.*, Connolly Decl. Ex. 3-10 at WFW&S-01060.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 10

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

statutory term of art—"wage scale or salary range"—that determines liability. That makes the Plaintiffs' proposed definition a prototypical fail-safe class because "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman* v. *Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). The Court should deny the motion to certify for that reason alone.

Plaintiffs' proposed class is also improperly fail-safe for other reasons. It requires the Court to ascertain whether an individual "applied" for a "job opening" through an improper "job posting." These are also terms of art taken from RCW 49.58.110. In particular, the statute defines a "job posting" as "any solicitation intended to recruit job applicants for a *specific available position*." RCW 49.58.110(1)(a) (emphasis added.) As Judge Settle has concluded, a "specific available position," by its plain language, means one that was *open* at the time the individual applied. *Moquete* v. *GNC Holdings, LLC*, No. CV24-05393 BHS, 2026 WL 622112 at *5 (W.D. Wash. Mar. 5, 2026). Plaintiffs' definition would require the Court to determine not only that an individual was an "applicant," but that she applied when a position was open. Yet one of the two Plaintiffs here, Ms. Burke, "applied" (through Indeed) when there was no specific available open position—and when she subsequently applied through Jobvite, the pay range was disclosed. As a result, to determine whether she is a member of her own class, the Court must determine that she "applied for a job opening" and that the listing did not "disclose the wage scale or salary range." Those inquiries are merits questions the Court must first resolve to determine class membership, reinforcing the fail-safe nature of Plaintiffs' class definition. *See also* Declaration of Malaika Eaton ("Eaton Decl.") at Exs. 2, 13, 15 (orders in Washington trial courts that EPOA plaintiffs were seeking or appearing to seek impermissible fail-safe classes).

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 11

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

### 2. Plaintiffs' definition ignores whether class members have standing.

To have standing for a statutory cause of action under Washington law, plaintiffs must demonstrate that they incurred an injury in fact and are within the zone of interest protected by the statute. *Tacoma Auto Mall, Inc.* v. *Nissan N. Am., Inc.*, 279 P.3d 487, 491 (Wash. App. 2012). Plaintiffs in this case pleaded injury-in-fact, claiming that they "lost valuable time applying for jobs" and "suffered economic and noneconomic harm." Dkt. 31 ¶¶ 33-34. But that allegation does not resolve standing for all class members. *See Barnes* v. *Coca-Cola Co.*, No. 1:22-cv-0-1511-KJM-EPG, 2025 WL 1027431 *6 (E.D. Cal. Apr. 7, 2025) (courts in Ninth Circuit may consider relevance of individual class members' standing when analyzing appropriateness of class litigation).

In *Branson*, 574 P.3d 1031, 1039 n.7, the Washington Supreme Court declined to decide standing issues but observed in a footnote that a plaintiff who meets the definition of "job applicant" "likely is within the protected zone of interest." Three dissenting justices doubted that many prospective EPOA plaintiffs could satisfy Washington's standing requirements. *Id.* at 1044 & n.11 (McCloud, J., dissenting). Lower courts have recognized that the issue remains open. *See* Eaton Decl. Ex. 4, Hearing Tr. at 26. One state court judge recently denied a motion to dismiss on standing grounds, concluding that the named plaintiffs had pleaded facts that would put them within the zone of interest, while observing that standing must be demonstrated at every stage and the calculus might later change. *Id.* at 44-45. The court's conclusion highlights difficult standing issues that Plaintiffs have elided in their proposed class definition. This Court cannot assume that all class members "applied" in the same way as Plaintiffs, or that they "lost valuable time applying for jobs" or suffered tangible harm as a result.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 12

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

### 3. Plaintiffs have not established that it is administratively feasible to determine class membership.

Even if the proposed class definition is not improperly "fail-safe," it still does not satisfy the ascertainability requirement. The need for ascertainability arises from Rule 23(c)(2), which requires "individual notice to all members who can be identified through reasonable effort." Courts require that "(i) members of the proposed class are readily identifiable by objective criteria, and (ii) it is administratively feasible to determine whether a particular person is a member of the class." *Weidenhamer* v. *Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 7157282 at *4 (W.D. Wash. Nov. 13, 2015) (citation omitted).

Plaintiffs' assurances that WFW&S has access to all necessary records is not proof that it is administratively feasible to determine membership in Plaintiffs' expansive class. Plaintiffs ignore WFW&S's testimony that it has incomplete records for job postings advertised on Indeed, a key component of Plaintiffs' theory of the case. Carman Tr. at 199-203. WFW&S has been able to obtain some records from Indeed showing the number of inquiries made in response to specific job postings, and limited identifying information about the "applicants," but not their emails or residential addresses. Baker Decl. ¶¶ 19-20. Without valid addresses, it would be difficult to identify and provide notice to prospective class members who "applied" only through Indeed.

### C. Amendments to the EPOA in 2025 are retroactive and create manifold individualized determinations.

#### 1. The amendments are retroactive.

In 2025 the Washington Legislature replaced the fixed $5,000 statutory damages provisions with RCW 49.58.110(5)(a), which provides that "a prevailing job applicant or employee is entitled to statutory damages of no less than $100 and no more than $5,000 per violation." These amendments also identify several factors courts must consider in determining an appropriate measure of statutory damages. *See id.* (discussed *infra*). These

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT. (No. 2:24-cv-00589-JHC) – Page 13

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

remedies are now exclusive, and the prior provisions permitting an award of actual damages for job applicants no longer apply. *See* RCW 49.58.110(6).

The Legislature was concerned about the onslaught of class actions enriching plaintiffs' law firms and threatening Washington businesses based on technically noncompliant job postings, some of which were controlled by third parties. *See, e.g.*, Eaton Decl. Ex. 17 (Washington Senate Report referring to the "cottage industry" of law firms that had filed hundreds of lawsuits and cost Washington businesses hundreds of millions of dollars while providing little benefit to workers); *Id.* Ex. 18 (House Report noting unintended consequences of the statutory damages provision allowing the law to enrich enterprising lawyers rather than benefitting workers).

Plaintiffs contend, in a conclusory sentence, that this amendment did not go into effect until July 27, 2025, "and therefore the original statutory damages of $5,000 apply to Plaintiff and the proposed class." Dkt. 65, at 4.[5] Plaintiffs' oversimplification is self-serving and wrong. Although statutory amendments are presumed to operate prospectively, that presumption will be overcome if "(1) the Legislature explicitly provides for retroactivity, (2) the amendment is curative, or (3) the statute is remedial." *Kellogg* v. *National Railroad Passenger Corp.*, 504 P.3d 796, 805 (Wash. 2022) (en banc) (citations and quotations omitted). Here, the amendment to the statutory damages provision was plainly "remedial, meaning that it relates to practice, procedure or remedies, and does not affect a substantive or vested right." *Id.* (citations and quotation marks omitted).

Washington courts consistently have held that a modification to a statutory remedy provision is remedial in nature and should be given retroactive effect. *See Marine Power*

---

[5] Other provisions of the 2025 amendments, requiring employers to be given notice and an opportunity to correct posting violations, expressly stated that they applied to postings following the effective date of the amendment on July 27, 2025, and for two years thereafter. RCW 49.58.110(1)(b). But that effective date was not included in the amendment to the statutory damages provision in RCW 49.58.110(5)(a).

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 14

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*& Equip. Co.* v. *Human Rights Comm'n Hearing Tribunal*, 694 P.2d 697, 700-704 (Wash. App. 1985); *Bayless* v. *Community Coll. Dist. No. XIX*, 927 P.2d 254, 254-56 (Wash. App. 1996); *see also Macumber* v. *Shafer*, 637 P.2d 645, 646 (Wash. 1981) (amendment to homestead exemption amount was remedial and would be given retroactive effect). "Where 'it is clear from the language of the statute that a private cause of action existed under the statute then in effect' and the amendment 'merely modifie[s] the existing remedy,' the amendment is remedial," and "[the amendment] may be applied retroactively." *Gardner* v. *Wells Fargo Bank, NA*, 2020 WL 3270164, at *2 (E.D. Wash. June 17, 2020) (quoting *Bayless*, 927 P.2d at 256).

Statutory amendments have also been deemed "remedial" and retroactive when they arise "in direct response" to judicial authority that the Legislature believed "failed to recognize" the original purpose of the statute. *Hale* v. *Wellpinit Sch. Dist. No. 49*, 198 P.3d 1021, 1028 (Wash. 2009) (en banc); *see also Marine Power*, 694 P.2d at 701-02 (statute authorizing emotional distress recovery that was enacted in response to a holding in a pending court case was remedial). Here, the legislative history demonstrates an intent to address ongoing abuses of the EPOA by scaling back statutory damages.

Nor can Plaintiffs argue that retroactive application of the 2025 amendments would deprive them of a substantive or vested right. Under Washington law, "[a] vested right involves more than a mere expectation; the right must have become a title, legal or equitable, to the present or future enjoyment of property." *In re F.D. Processing, Inc.*, 832 P.2d 1303, 1309 (Wash. 1992) (citations and internal quotations omitted). A statute affecting the quantum of recovery does not vest legal or equitable title. Indeed, Washington courts have held that even the "[a]bolition of a statutory cause of action does not impair any vested right." *1000 Virginia Ltd. P'ship* v. *Vertecs Corp.*, 146 P.3d 423, 434 (Wash. 2006) (en banc). The right to specified recovery under a statutory cause of action becomes "vested" only when a case is resolved and final judgment is entered. *See*

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 15

*Johnson* v. *Continental West, Inc.*, 663 P.2d 482, 486 (Wash. 1983); *Hansen* v. *W. Coast Wholesale Drug Co.*, 289 P.2d 718, 720 (Wash. 1955) (en banc); *see also Robinson* v. *McHugh*, 291 P. 330, 333 (Wash. 1930) ("Where a tort action can be brought *only by virtue of a statute*, there can be no vested right therein, and the legislature may take away the right at any time."). Plaintiffs have no vested right to the remedies previously available under the now eliminated RCW 49.58.070. This outcome is consistent with the authority holding that statutes modifying the quantum of recovery may be applied retroactively. *See Bayless*, 927 P.2d at 256; *Marine Power*, 694 P.2d at 700; *Macumber*, 637 P.2d at 646.

State trial courts in Washington handling EPOA cases recently have determined that the 2025 amendments set forth in RCW 49.58.110(5)(a) are to be applied retroactively to all pending cases. *See, e.g.*, Eaton Decl. Ex. 4, at transcript pages 46-48; *see also id.* Ex. 12 at 2; *id.* Ex. 14 at 2. This Court should reach the same result.[6]

### 2. The variability in statutory damages will require individualized determinations unsuitable for class treatment.

If RCW 49.58.110(5)(a) applies, the Court will need to decide whether each class member can claim $100, $5,000, or some amount in between. The statute provides that the Court must consider "[w]hether the violation was committed willfully or the violation is a repeat violation; the size of the employer; the amount necessary to deter future noncompliance; the purposes of this chapter; *and any other factor deemed appropriate by the court*." (Emphasis added.) In other words, the parties may present evidence and argument about anything they believe would persuade the Court to award lower or higher statutory damages. That standard would entitle WFW&S to present individualized evidence based on each class member's circumstances. WFW&S would expect to argue, for instance, that Ms. Burke (and others similarly situated) has no viable EPOA claim or, alternatively, should only receive nominal statutory damages, since WFW&S's posting on

---

[6] The Court of Appeals for the Seventh Circuit recently reached a similar result under Illinois law. *See Clay v. Union Pacific RR Co.*, 171 F.4th 975, 981-83 (7th Cir. 2026).

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 16

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Jobvite disclosed the pay range and WFW&S offered her a job within that range. The same would be true as to Ms. Branson, who applied for two positions that disclosed the pay range, and then almost immediately searched on Indeed for a posting that did not contain a pay disclosure so she could pursue an EPOA claim. Even then, WFW&S readily disclosed the pay range by email as soon as she asked—after she had already filed this lawsuit (unbeknownst to the store manager). As to other putative class members, WFW&S would seek to explore whether they were serial EPOA plaintiffs; whether they had any interest in working for WFW&S or were looking to generate a claim; and whether WFW&S encouraged them to apply through Jobvite or provided them with the pay range through the Jobvite posting or by other means. These individualized issues in setting statutory damages would overwhelm any common issues, rendering class certification improper or impractical.

**D. The proposed class is too broad to warrant certification and, at minimum, should be limited to individuals who applied for the same open positions as Plaintiffs.**

The named Plaintiffs applied for a total of at most three distinct WFW&S positions during two discrete periods, but in each instance they received the required pay transparency. Yet they seek to represent a class that would encompass thousands of individuals who applied to many different open positions at WFW&S during a 31-month period when the job-posting policies were changing. A growing number of courts have held, either explicitly or implicitly, that if certification of an EPOA class is warranted at all (and it should not be here), it should be limited to class members who applied for the *same* specifically available position as the representative party. The relevant orders are attached to the Eaton Declaration as Exhibits 1, 2, 5, 7, 9-13, 15, and 16. In *Milito* v. *Electronic Arts, Inc.*, No. 25-2-35947-6 (Wash. Super. Ct. King Cnty. May 15, 2026), for instance, Judge Petersen struck the proposed class allegations "to the extent they go beyond the subject job posting attached to Plaintiff's Complaint." Eaton Decl. Ex. 12 at 2.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 17

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

And in *Petzing* v. *Discount Tire Co.*, No. 24-2-25791-8 SEA (Wash. Super. Ct. King Cty. May 1, 2026), Judge Ryan limited any potential certification to members who "applied for the same exact position in and around the same time." Eaton Decl. Ex. 10 at Tr. 47; *see also Milito* v. *Snap Inc.*, No. 25-2-03854-8, Order at 3 (Wash. Super. Ct. King Cnty. Dec. 17, 2025) (Eaton Decl. Ex. 3 at 3) (denying class certification in part because "Plaintiff seeks to pursue claims on behalf of applicants to posts other than the one to which he applied," and an EPOA violation "cannot be established with evidence common to the entire class"). Those decisions include not just certification denials, but orders denying named plaintiffs' requests to obtain discovery relating to positions for which they themselves did not apply. *See* Eaton Decl. Ex. 1 at 1-2; Ex. 2 at 2; Ex. 5 at 2; Ex. 7 at 1; Ex. 9 at 1-2; Ex. 11 at 1; Ex. 13 at 1-2.

These decisions should guide the Court in this case, where the Plaintiffs are seeking certification of an unusually large class, encompassing manifold positions, at numerous stores throughout the state, and over a lengthy class period. Ms. Burke's experience applying for a cashier opening in January 2024, after a WFW&S employee specifically told her the pay range, will not be comparable to another person's application for a stock receiver opening in July 2025 when, among other differences from Ms. Burke's circumstances, precise pay ranges were posted. And Ms. Branson, who could not even remember the positions she applied for, should not be given control over the claims of persons who applied for different positions at different stores at different times. Moreover, the Plaintiffs' utter lack of understanding of class issues, damages, and other aspects of the litigation counsels against their representation of broad classes of applicants. The Court should deny certification on this basis alone or, alternatively, limit the class to persons who applied for the same open positions at the same stores as Plaintiffs.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 18

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**E. Plaintiffs have not satisfied the requirements of Rule 23(a).**

   **1. Plaintiffs cannot establish numerosity under Rule 23(a)(1) for each open position.**

Plaintiffs state that WFW&S "cannot dispute numerosity." As set forth above, however, Plaintiffs' proposed class is far too broad to be certified, and Plaintiffs have not satisfied numerosity as to any certifiable residuum of individuals who applied for the same "specific available position" as Plaintiffs. Moreover, as Judge Settle has concluded, the EPOA only covers individuals who applied for an *open* position. *Moquete*, 2026 WL 622112 at *4, 5. Even if an individual applied for a job that was posted and was not EPOA-compliant, the individual has no claim if the position already had been filled at the time of the application. *Id.* at *4.

The record evidence shows that a total of 32 "applications" (including Ms. Branson's) were submitted through Indeed for the Wine/Spirits Sales Associate position that forms the basis for Ms. Branson's only claim in this case. Connolly Decl. Ex. 3-13. That figure falls below the general threshold of 40 putative class members, where impracticability of joinder is generally assumed. *E.g.*, *De Coster* v. *Amazon.com, Inc.*, 350 F.R.D. 293, 305-06 (W.D. Wash. 2025). The Indeed applications for Ms. Burke's cashier position were higher (132), but that position was not open when Ms. Burke's Indeed "application" was submitted and therefore no certifiable class exists. And although the Jobvite applications for the cashier position were also higher than 40, the Jobvite posting included a pay range, and Jobvite applicants for that position would not constitute a certifiable class for that reason. In short, Plaintiffs have failed to demonstrate numerosity for a properly defined EPOA class.

   **2. The questions raised are not common to the class as defined (Rule 23(a)(2)).**

For purposes of this case, this factor is better considered under Rule 23(b)(1), measuring whether common questions predominate. *See infra*.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 19

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

### 3. The claims of the representative parties are not typical (Rule 23(a)(3)).

**Ms. Branson**. Plaintiff Branson's claim, as set forth in her Complaint, is manifestly atypical of her putative class because she cannot even show that she is a "job applicant" within the meaning of RCW 49.58.110(5)(a), or that she "applied" within the meaning of the predecessor version, RCW 49.58.110(4).[7] Instead, the Complaint asserts that Ms. Branson submitted an inquiry only through Indeed. When that inquiry reached WFW&S, a store manager contacted her and said she could apply for the position through WFW&S's site and sent her a link to Jobvite. In addition, the store manager specifically provided the salary range for the position. But Ms. Branson chose *not* to apply through Jobvite, most likely because she knew that posting included the required pay band. Hence, under the terms of her own Complaint, Ms. Branson cannot establish that she was an aggrieved "job applicant," because she deliberately avoided the pay transparency provided on Jobvite.

To be sure, WFW&S records show that Ms. Branson applied for two other positions on Jobvite, but her Complaint does not mention them and in her deposition she testified to having no clear recollection of those applications. And even if the Court were to consider those applications, documentary evidence shows that WFW&S *disclosed the pay band for both positions*. Connolly Decl. Ex. 3-10 at WFW&S-01060; Ex. 3-11, at WFW&S-00034.

**Ms. Burke**. Ms. Burke's claim is based on her single application for a cashier position submitted through Jobvite in January 2024. Although Ms. Burke found the listing through Indeed, she could not apply through that site. Moreover, as explained above, there was no specific available position open when she submitted her Indeed application in December.

---

[7] *See Branson*, 574 P.3d at 1040 (defining job applicant to mean that a "person must *apply* to any solicitation intended to recruit job applicants for a specific available position" regardless of subjective intent) (emphasis added).

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

On January 21, 2024, after a cashier position became available, WFW&S's store manager contacted Ms. Burke and asked her to apply through Jobvite. The Jobvite listing through which she applied clearly disclosed the pay range for the position as "$12.00 - $24.00" per hour. Ex. 3-17, at WFW&S-01079. The listing further explained that compensation might vary based on several factors, and it expressly stated that "[t]he actual hourly rate will equal or exceed the required minimum wage applicable to the job location." Thus, Ms. Burke's claim is not based on a "job posting [that] did not disclose the wage scale or salary range for the position." Moreover, she applied for and was offered the position at $20.80, an hourly wage within the posted range. She declined the position for her own reasons, as was her prerogative. But she cannot contend that her claim is typical of persons who applied for other specific available positions under different circumstances. *See*, *e.g.*, *Ellis* v. *Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011) (claims are atypical when representative will be preoccupied with unique defenses); *Small* v. *Allianz Life Ins. Co.*, 122 F.4th 1182, 1203 (9th Cir. 2024).

Because Plaintiffs cannot establish that their claims are typical of the class they seek to represent, the motion should be denied.

### 4. The representative parties will not fairly and adequately protect the interests of the class (Rule 23(a)(4)).

Plaintiffs have not shown that they will fairly and adequately protect the interests of the class. The fact that their claims are atypical of class members reinforces inadequacy. *See Hanon* v. *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In addition, Plaintiffs have renounced recovery of actual damages on behalf of themselves and absent class members. (Actual damages would not be available if the 2025 EPOA amendments are given retroactive effect. *See* RCW 49.58.110(5)(a).) Plaintiffs' intent, of course, is to avoid the individualized inquiries that would be necessitated by claims for actual damages, defeating class certification. But that decision effectively splits the class members' claims, which some courts have found to be sufficient reason to deny

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 21

certification. *E.g.*, *Krueger* v. *Wyeth, Inc.*, No. 03CV2496, 2008 WL 481956, at *4 (S.D. Cal. Feb. 19, 2008).

Moreover, as set forth above in Part II.B, Plaintiffs have no meaningful knowledge of this case, the claims at issue, or their roles as class representatives. EPOA litigation in Washington has been orchestrated by a few lawyers, *see* Eaton Decl. Ex. 17 at 3, as reflected by the hundreds of EPOA cases filed by Plaintiffs' counsel, often through serial plaintiffs. It is also evidenced by counsel's earlier representation of Mr. Atkinson, a serial plaintiff whose claim was dismissed the same day counsel filed this action.

Although case law in this circuit sets a relatively low bar for a class representative's adequacy as measured by active supervision over the litigation, *see Local Joint Exec. Bd.* v. *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001), Plaintiffs here cannot clear it. Their depositions show they have no effective understanding of or control over the litigation. *See Bodner* v. *Oreck Direct, LLC*, No C06-4756-MHP, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (denying certification based on plaintiff's "undeniable and overwhelming ignorance regarding the nature of this action," and because counsel was the "driving force behind this action"); *In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012) (representative inadequate in part because he testified "that he knows essentially nothing about the case, and indicated that he would defer to counsel"), *aff'd*, 588 Fed. Appx. 733 (9th Cir. 2014); *Sanchez* v. *Wal Mart Stores, Inc.*, No. 2:06-CV-02573, 2009 WL 1514435 at *3 (E.D. Cal. May 28, 2009) ("Class counsel may not act 'on behalf of an essentially unknowledgeable client,' [because it] 'would risk a denial of due process to the absent class members.'") (citation omitted).

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 22

MᴄNᴀᴜʟ Eʙᴇʟ PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**F. Plaintiffs have not satisfied the requirements of Rule 23(b)(3).**

    **1.   Common questions of law or fact do not predominate.**

Plaintiffs' analysis of Rule 23(b)(3) is unpersuasive because Plaintiffs misinterpret the EPOA and fail to consider individualized questions the Court will need to resolve. Those questions, discussed throughout this Opposition, include the following:

- Whether an individual made a formal job application, or simply "applied" through Indeed but did not follow through on Jobvite. This inquiry encompasses the question whether WFW&S contacted Indeed applicants and told them to apply formally through Jobvite, and whether WFW&S expressly informed them of the pay range during that communication.

- Whether an individual applied for a specific *available* position and not, for instance, for a position that was posted but already filled at the time of the application, as was the case with Ms. Burke's Indeed application.

- Whether an individual relied on a "posting" that did *not* include the "salary range." Plaintiffs' proposed class implicates multiple possibilities:
  - Indeed applicants through postings that did not include a salary range, but directed individuals to Jobvite that either did or did not include a pay band.
  - Indeed applicants who were expressly provided the pay range during communications with WFW&S.
  - Jobvite applicants through postings that included a national pay band.
  - Jobvite applicants through postings that included a Washington pay band.

- Whether an individual is within the "zone of interest" covered by the EPOA, and therefore has standing under the statute.

- Assuming the amendments to the EPOA apply retroactively, whether an individual would be entitled to statutory damages of $100, $5,000, or something in between. Plaintiffs have not and cannot "provide a damages model that

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 23

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

demonstrates that 'damages are susceptible of measurement across the entire class.'" *Lundquist* v. *First Nat'l Ins. Co.*, No. C18-5301RJB, 2020 WL 6158984 *2 (W.D. Wash. Oct. 21, 2020) (quoting *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 35 (2013)). The amended EPOA allows WFW&S to present evidence and argue that individual circumstances call for minimal statutory damages for many applicants—including the named Plaintiffs here—and WFW&S intends to make those arguments if a class is certified and liability is established.

### 2. A class action is not superior to other available methods.

It follows from the foregoing arguments that Plaintiffs cannot meet their burden to show that a class action is superior to other methods for fairly and efficiently adjudicating this controversy.

First, Plaintiffs' expansive class definition implicates numerous individual questions unsuitable for class treatment. Courts frequently hold that such questions make a class action unmanageable and therefore not superior to other available methods. *E.g.*, *Berry* v. *Transdev Servs. Inc.*, No. C15-01299-RAJ, 2019 WL 117997, at *7 (W.D. Wash. Jan. 7, 2019).

Second, the EPOA provides both for statutory damages and for recovery of attorney's fees for prevailing litigants. It also gives aggrieved applicants an administrative remedy in the same monetary amounts simply by filing a complaint with Washington's Department of Labor and Industries (L&I). RCW 49.58.110(4)(a). Those remedies were intended to give truly aggrieved individuals the economic wherewithal to file claims and obtain a recovery. *See Rowden* v. *Pacific Parking Sys.*, 282 F.R.D. 581, 586-87 (C.D. Cal 2012) (available administrative remedy combined with availability of individual litigation rendered class litigation inferior), *aff'd*, 583 Fed. Appx. 803 (9th Cir. 2014). This case is unlike most legitimate class actions, where recoverable damages are dwarfed by the costs an individual plaintiff would incur in seeking them. *Compare Amchem Prods., Inc.* v.

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 24

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Windsor*, 521 U.S. 591, 617 (1997) (policy at the core of class litigation "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action") (citation and quotations omitted); *see Morrison* v. *Esurance Ins. Co.*, No. C18-1316TSZ, 2020 WL 583824, at *6 (W.D. Wash. Feb. 6, 2020) (class litigation not superior when damages ranged from $10,000 to $35,000 with possibility of trebling and attorney's fees).

Third, Plaintiffs seek a ruinous damages award untethered to actual damages; thus, the action would not serve the purposes of the EPOA nor deliver justice to unnamed class members. In *Bateman* v. *Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), the court held that when damages in a putative class action are completely disproportionate to actual harm, the court looks to legislative intent to determine whether class litigation is warranted. In that case, the Court concluded that Congress had not imposed clear limitations for class litigation of violations of a federal statute, but the Court "reserve[d] judgment as to whether a showing of 'ruinous liability' would warrant denial of class certification." *Id.* at 723. In subsequent cases, the Court of Appeals held that disproportionality between statutory and actual damages can constitute a due process violation. *See Wakefield* v. *ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022); *Gessele* v. *Jack in the Box Inc.*, 174 F.4th 1108, 1127 (9th Cir. 2026) (court must consider ratio between statutory and actual damages). District courts are divided on whether "ruinous liability" may be grounds for denying class certification. *Compare In re Toys "R" Us*, 300 F.R.D. 347 (C.D. Cal. 2013) (granting certification) *with Rowden*, *supra*, 282 F.R.D. at 587 (denying certification).

Here, although the EPOA does not mention class-based relief, its structure implies that the Legislature was not contemplating mass actions that would destroy Washington businesses that caused no actual economic damage to job applicants. That is a reasonable inference from statutory provisions giving L&I the power to investigate EPOA violations

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

and to obtain compensation for aggrieved individuals, and from the 2025 amendments giving courts discretion to reduce statutory damages to as little as $100. The Legislature obviously was concerned by the profound impact on Washington employers caused by hundreds of EPOA cases seeking $5,000 per violation on a class-wide basis.

Finally, applicants who are truly interested in obtaining relief have their own interests in controlling their cases, which may not be served by Plaintiffs.

## IV.  CONCLUSION

For the reasons stated, WFW&S respectfully requests that the motion to certify be denied.

* * *

I certify that this Response contains 8,397 words, in compliance with the Local Civil Rules.

DATED this 3rd day of June, 2026    Respectfully submitted,

McNAUL EBEL NAWROT & HELGREN PLLC

By: s/ Malaika M. Eaton
   Malaika M. Eaton, WSBA No. 32837

600 University Street, Suite 2700
Seattle, Washington 98101
(206) 467-1816
meaton@mcnaul.com

William J. Murphy
(Admitted Pro Hac Vice)
John J. Connolly
(Admitted Pro Hac Vice)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202-1031
(410) 332-0444
wmurphy@zuckerman.com
jconnolly@zuckerman.com

Attorneys for Defendant Washington Fine Wine & Spirits, LLC, d/b/a Total Wine & More

DEFS.' RESPONSE IN OPP'N TO MOT. FOR CLASS CERT.
(No. 2:24-cv-00589-JHC) – Page 26

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816